967 F.2d 590
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Richard Brent ROUGH; Pamela Ann Rough, et al., Plaintiffs-Appellants,
v.
MONTANA STATE DEPARTMENT OF FAMILY SERVICES, Montana
Department of Social and Rehabilitation Services, Mountain
View School for Girls, Montana State Department of
Institutions (Probation); Susan Talbot Center; Stillwater
County Child Protection Team, Yellowstone County Child
Protection Team, Defendants-Appellees.
 No. 91-35441.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 4, 1992.
Decided June 15, 1992.
 
 Before EUGENE A. WRIGHT, CANBY and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 The Rough family filed this action under 42 U.S.C. section 1983 against various Montana state agencies and the Talbot Center. The district court dismissed the claims against the state agencies and granted the Talbot Center's motion for summary judgment. The Roughs appeal the district court's order, and they filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. section 1291. We affirm.
 
 BACKGROUND
 
 3
 Krista Kay Callen was born on September 15, 1972 and is the stepdaughter of plaintiff Richard Rough and the natural daughter of plaintiff Pamela Rough. The other Rough plaintiffs are Krista's half siblings. On May 29, 1986, Krista was adjudged a delinquent by the State of Montana based upon the Roughs' charges that she was ungovernable, ran away, and stole food stamps from her mother. Krista was removed from the Rough household and placed in the Mountain View School, one of the state defendants. Montana then placed Krista with defendant Talbot Center where she was a resident from September 1, 1987 to December 14, 1987, when she ran away. On December 22, 1988, the state again placed Krista with the Talbot Center, and she stayed there until January 23, 1989, when she ran away again.
 
 
 4
 The Talbot Center is a youth group home which contracts with Montana to provide care for eligible youths. Because the Talbot Center emphasizes personal responsibility, it is an "open" facility that does not lock up its residents. When Krista was not placed with the Talbot Center or on the run, she resided at the Mountain View School, which is a more restrictive facility that cares for juvenile delinquents. Krista was released from state control when she reached the age of majority on September 15, 1990.
 
 
 5
 On May 16, 1989, the Roughs filed a complaint against numerous Montana agencies and the Talbot Center in the United States District Court for the District of Montana. The complaint alleges various violations of the Roughs' civil rights under 42 U.S.C. section 1983 and seeks $5.4 million in damages, as well as injunctive and declaratory relief. The complaint does not name any specific state officials, either in their official or individual capacity. The state defendants filed a motion to dismiss, and the Talbot Center filed a motion for summary judgment. Pursuant to 28 U.S.C. section 636(b)(1), the district court referred the case to the United States Magistrate, who issued his Findings and Recommendation on December 12, 1990. On January 17, 1991, the district court accepted the magistrate's recommendation and issued an order dismissing the claims against the state defendants and granting summary judgment in favor of the Talbot Center. The Roughs appeal this decision.
 
 DISCUSSION
 A. Claims Against the State Defendants
 
 6
 The district court dismissed the Roughs' claims against the state defendants because it determined that the state defendants were entitled to immunity under the Eleventh Amendment. Dismissal of a complaint for lack of subject matter jurisdiction is an issue of law and is reviewed de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990).
 
 
 7
 The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." While the plain language of the Eleventh Amendment does not expressly bar suits against a state by its own citizens, it is well established constitutional law that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 663 (1974) (citing Hans v. Louisiana, 134 U.S. 1 (1890)).
 
 
 8
 It is also well settled that the Eleventh Amendment prohibits actions for damages against a state when Congress has failed to express a contrary intent. See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242 (1985) (congressional intent to override the principles of sovereign immunity embodied in the Eleventh Amendment must be "unmistakably clear"). Therefore, the Roughs' claims for damages under section 1983 are barred by the Eleventh Amendment. See, e.g., Quern v. Jordan, 440 U.S. 332 (1979) (state governments and their agencies are not amenable to suit under 42 U.S.C. § 1983).
 
 
 9
 We reject the Roughs' argument that Montana has waived its Eleventh Amendment immunity by enacting Article II, section 18 of the Montana Constitution in 1972. This precise issue was decided in Montana v. Peretti, 661 F.2d 756, 758 (9th Cir.1981), and the Roughs have failed to provide any reason not to follow the clear mandate of Peretti. Peretti is good law, and the Roughs' argument is without merit. Montana has not waived its immunity to suit under the Eleventh Amendment.
 
 
 10
 The Roughs also argue that the state is not immune to suit under the Eleventh Amendment because they seek injunctive and declaratory relief in addition to their $5.4 million damage claim. In their statement of issues presented, the Roughs ask, "DO CITIZENS HAVE THE RIGHT TO SEEK INJUNCTIVE AND DECLARATORY RELIEF AGAINST A STATE AND ITS AGENCIES IN U.S. DISTRICT COURT UNDER 42 USCS § 1983?" The answer to this question is no. The Eleventh Amendment bars actions for injunctive relief against the state and its agencies, absent consent to suit. General Motors Corp. v. California State Bd. of Equalization, 815 F.2d 1305, 1309 (9th Cir.1987), cert. denied, 485 U.S. 941 (1988). The legal fiction recognized in Ex parte Young, 209 U.S. 123 (1908), has never been extended to allow suit directly against the state and its agencies.
 
 
 11
 To obtain relief under Ex parte Young, the Roughs must bring an action against state officials instead of against state agencies. Although the Roughs' complaint does name Does 1-100, it does not state which state agency these Does worked for or explain the official position of these Does. The complaint does not allege any specific actions by these Does that violated federal law.[1] The complaint makes broad allegations that various state agencies violated federal law and merely states that the Does are "various supervisors and employees of these agencies." As the Roughs' statement of the issue demonstrates, the state is the real party in interest. Allowing injunctive relief against the state simply because a plaintiff adds the phrase "Does 1-100" to the complaint, without more, stretches the Ex parte Young fiction too far. See Pennhurst State School & Hosp., 465 U.S. at 100-03.
 
 B. Claims Against the Talbot Center
 
 12
 The district court entered summary judgment in favor of the Talbot Center because the Roughs' conclusory allegations were not accompanied by any facts which could support a rational jury verdict. In the opinion of the district court, the undisputed facts show that the Talbot Center is entitled to judgment as a matter of law.
 
 
 13
 A grant of summary judgment is reviewed de novo. Tzung v. State Farm Fire & Cas. Co., 873 F.2d 1338, 1339 (9th Cir.1989); T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). Viewing the evidence in the light most favorable to the nonmoving party, this court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung, 873 F.2d at 1339-40. "[T]he court's ultimate inquiry is to determine whether the "specific facts" set forth by the [Roughs], coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in [the Roughs'] favor based on that evidence." T.W. Elec., 809 F.2d at 631.
 
 
 14
 After reviewing the record and the undisputed facts in this case, we agree with the district court that the Talbot center is entitled to judgment as a matter of law. First, it is undisputed that it is the policy of Montana to "preserve the unity and welfare of the family whenever possible." Mont.Code Ann. § 41-3-101(1)(d); see also Mont.Code Ann. § 41-5-102(1). However, the statutes the Roughs rely upon do not provide the Roughs with any substantive rights or cause of action.
 
 
 15
 Second, it is undisputed that the Talbot Center to which Krista was assigned provided care to no more that eight youths at any given time. Therefore, the Talbot center is a "youth group home" as defined by Mont.Code Ann. § 41-3-1102(8). Because the Talbot Center is a youth group home, the Roughs cannot pursue a claim against the Talbot Center for failure to prepare a case plan or to meet the other requirements of a child care agency.
 
 
 16
 Third, because Krista was adjudged a delinquent youth and was institutionalized on the basis of her delinquency, the Roughs cannot pursue a claim against the Talbot Center for alleged violations of federal statutes governing foster care and adoption assistance. The statutory scheme relied upon by the Roughs specifically excludes facilities which care for "children who are determined to be delinquent." See 42 U.S.C. § 672(c)(2) (1988).
 
 
 17
 Fourth, the Talbot Center did not violate any state law or right of the Roughs by failing to report Krista's sexual encounter with a young man behind the Roxy Theater in December 1987. Krista was given an opportunity to report the incident to the authorities, but she chose not to report it. Moreover, the Talbot Center's investigation showed that Krista's encounter with the young man was voluntary. Even if we accept the Roughs' characterization of the encounter as a sexual attack on Krista, however, the Talbot Center still had no duty to report the incident.
 
 
 18
 Montana does require certain health care professionals, social workers, counselors, and other professionals to report incidents of child abuse. Mont.Code Ann. § 41-3-201. However, child abuse is defined as "harm by the acts or omissions of his parent or other person responsible for his welfare." § 41-3-102(2). For purposes of the reporting statute, child abuse does not include sexual abuse against the child committed by a third party unknown to the parent or other person responsible for the child's welfare. The Roughs have failed to present a material issue of fact that would preclude summary judgment.
 
 
 19
 Finally, the Roughs claim that they are members of a protected class of wrongfully accused child abusers who have suffered invidious discrimination at the hands of the Talbot Center. Similar to the Roughs' other claims, the Roughs have failed to allege any facts showing a violation of their rights and which would permit them to maintain an action under section 1983.
 
 CONCLUSION
 
 20
 The dismissal of the Roughs' claims against the state defendants was proper because Montana is entitled to immunity from suit in federal court under the Eleventh Amendment. The grant of summary judgment in favor of the Talbot Center was also proper because the Roughs failed to allege facts that could support a jury verdict. Therefore, we AFFIRM the district court's order.
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Indeed, the only specific allegation against the Does if found at p. 8, p 15 of the Roughs' complaint: "Various individual John and Jane Doe Defendants failed to provide adequate supervision, consultation and/or recommendations to the caseworkers and others involved in the placement and care of Krista." However, there is no prayer for injunctive relief to remedy this alleged problem. Moreover, it is impossible to tell whether this allegation is Directed at state Does or at Does that worked at the Talbot Center